UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO, MICHAEL C. BOURGAL, DARIN JEFFERS, THOMAS COSTELLO, FRANK H. FINKEL, MARC HERBST, THOMAS F. CORBETT, ROBERT G. WESSELS, and ROCCO TOMASSETTI SR., as Trustees and Fiduciaries of the Local 282 Pension Trust Fund,

Plaintiffs,

-against-

WEBSTER PLUMBING SUPPLY INC. and JOHN DOE COMPANIES 1-99,

Defendants.
----------------------------------------------------------X

REPORT AND RECOMMENDATION
26 CV 480 (AMD)(RML)

LEVY, United States Magistrate Judge:

By order dated March 19, 2026, the Honorable Ann M. Donnelly, United States District Judge, referred plaintiffs' motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that the motion be granted.

## Background

Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael C. Bourgal, Darin Jeffers, Thomas Costello, Frank H. Finkel, Marc Herbst, Thomas F. Corbett, Robert G. Wessels, and Rocco Tomassetti Sr., as trustees and fiduciaries of the Local 282 Pension Trust Fund (collectively, "plaintiffs") initiated this action on January 28, 2026, against defendant Webster Plumbing Supply Inc. ("defendant") to recover unpaid withdrawal liability pursuant to the Multiemployer Pension Plan Amendments Act of 1980, as amended ("MPPAA"), 29 U.S.C. § 1381, *et seq.*, and the Employee Retirement Income Security Act of 1974, as amended

("ERISA"), 29 U.S.C. §§ 1381–1405 and 1451. (Complaint, dated Jan. 28, 2026 ("Compl."), Dkt. No. 1.)[1]

The Local 282 Pension Trust Fund (the "Fund") is an employee benefit and multiemployer plan with its principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042. (Id. ¶ 7.) Plaintiffs, as trustees and fiduciaries, have discretion and control over the assets and administration of the Fund. (Id. ¶ 6.) The Fund is jointly administered by a Board of Trustees in accordance with the Labor Management Relations Act and maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with the Building Material Teamsters Local 282, International Brotherhood of Teamsters (the "Union"), including defendant. (Id. ¶¶ 8-9, 13.)

Defendant is a New York corporation with its principal place of business at 1758 Webster Avenue, Bronx, New York 10457,[2] and is an employer under ERISA, 29 U.S.C. §

---

[1] The complaint also names as defendants John Doe Companies 1–99, who are "controlled group" members within the meaning of ERISA that might be jointly and severally liable for the amount due. (Compl. ¶¶ 24-30). Plaintiffs seek dismissal without prejudice as to these defendants. (Proposed Order, Dkt. No. 8-16, at 2.)

[2] Although defendant is located in the Bronx, which is in the Southern District of New York, venue is proper in this district under 28 U.S.C. § 1391, which provides that:

> [a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

(Continued….)

1002(5). (Id. ¶¶ 12-13.) Defendant entered into a collective bargaining agreement (the "CBA") with the Union, agreeing to make contributions to the Fund on behalf of all its covered employees. (Id. ¶¶ 9, 13; Declaration of Mario Bulding, dated Feb. 25, 2026 ("Bulding Decl."), Dkt. No. 8-9, ¶ 11.) In addition to these contribution requirements, the CBA bound defendant to the Trust Agreement. (Compl. ¶ 13.) On or around July 31, 2024, defendant permanently ceased to have an obligation to contribute to the Fund, thereby completely withdrawing from the Fund within the meaning of section 4203(a) of ERISA, 29 U.S.C. § 1383(a). (Id. ¶ 15.) The permanent cessation of the obligation to contribute to the Fund constituted a complete withdrawal from the Fund. (See id. ¶ 32.)

Plaintiffs seek a judgment in the amount of $144,280.38, consisting of: (1) $104,810 in withdrawal liability; (2) interest of $13,852.15 through February 27, 2026; (3) liquidated damages of $20,962; and (4) $4,656.19 in attorney's fees and costs. (Id. at 4.) Plaintiffs also seek interest of $51.69 for each day following February 27, 2026 through the date of payment. (Id.)

---

28 U.S.C. § 1391(b). Pursuant to section 1391(c), a corporate defendant resides in any judicial district in the state where it is subject to personal jurisdiction. Thus, even in cases where a defendant maintains its principal place of business in a different New York judicial district from the proposed venue, courts have found that the defendant may still be deemed a resident of the proposed venue. See Wareka v. Dryluxe LLC, No. 21 CV 2422, 2022 WL 2467544, at *1 n.3 (E.D.N.Y. Apr. 7, 2022) (holding that venue was proper in the Eastern District of New York despite the defendant's principal place of business being in the Southern District of New York "since Dryluxe, a New York Corporation, is subject to personal jurisdiction throughout New York State."), report and recommendation adopted, 2022 WL 2753106 (E.D.N.Y. July 14, 2022); Kennedy Stock, LLC v. NLS N.Y. Inc., No. 18 CV 4991, 2019 WL 13096650, at *3-4 (S.D.N.Y. Nov. 18, 2019) (finding that venue was proper in the Southern District of New York even though the defendant's principal place of business was in Queens, since the defendant entity was subject to personal jurisdiction throughout New York State and thus was deemed to reside "in this district."), report and recommendation adopted, 2021 WL 5013737 (S.D.N.Y. Oct. 27, 2021).

## DISCUSSION

I. Entry of Default Judgment

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for a plaintiff to obtain a default judgment. Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. US Flour Corp. v. Certified Bakery, Inc., No. 10 CV 2522, 2012 WL 728227, at *4 (E.D.N.Y. Mar. 6, 2012) ("A court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." (internal quotation marks and citation omitted)).

Plaintiffs have satisfied these procedural requirements. Defendant was served with the summons and complaint on January 29, 2026. (Affirmation of Service of James Perone, dated Jan. 29, 2026 ("Perone Aff."), Dkt. No. 5.) After defendant failed to appear, plaintiffs sought defendant's default, which the Clerk of the Court entered. (Certificate of Default, dated Feb. 24, 2026, Dkt. No. 7.) Plaintiffs then filed the present motion for default judgment. (Motion for Default Judgment, dated Feb. 27, 2026, Dkt. No. 8.)

In determining whether to enter a default judgment, the court considers: (1) whether the defendant's default is willful; (2) whether the defendant has a meritorious defense to

plaintiffs' claims; and (3) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. See Demopoulos v. Showtime on the Piers, LLC, No. 22 CV 5584, 2024 WL 4044008, at *4 (E.D.N.Y. Aug. 13, 2024), report and recommendation adopted, 2024 WL 4043690 (E.D.N.Y. Sept. 4, 2024). A consideration of these factors in the instant case counsels in favor of entering a default judgment against defendant. First, defendant's failure to respond to the complaint and the instant motion sufficiently demonstrate willfulness. See SEC v. McNulty, 137 F.3d 732, 738–39 (2d Cir. 1998) (finding defendant's non-appearance and failure to respond equated to willful conduct). Second, without an answer to the complaint, "the Court cannot determine whether defendant has a meritorious defense and granting a default judgment is favored under those circumstances." Avedana v. Casa Ofelia's Bakery LLC, No. 20 CV 2214, 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), report and recommendation adopted, 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). Finally, as to the third factor, plaintiffs will be prejudiced if the motion for default judgment is denied because they have "no alternative legal redress" to recover the withdrawal liability, liquidated damages, and attorney's fees and costs sought. United States v. Myers, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017).

Based on the foregoing considerations, entry of default judgment is warranted. The court now turns to standing, liability, damages, and other relief to be awarded in such a judgment.

## II. Standing

Standing is an "irreducible constitutional minimum." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Therefore, the court must evaluate whether a plaintiff has standing even where standing is not challenged. See Garnet v. Ramos Bros. Inc., No. 16 CV 2792, 2017

WL 590323, at *1 (E.D.N.Y. Feb. 13, 2017) (citation omitted). ERISA, "a comprehensive federal law that sets standards for private retirement and health plans, governs their administration, and generally preempts state regulation of benefits plans," "vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. C.M. Ashland Constr., 714 F. Supp. 3d 167, 176 (E.D.N.Y. 2024) (citing ERISA § 514(a) (29 U.S.C. § 1144(a)); quoting Trs. of Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc., No. 10 CV 322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), report and recommendation adopted, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011); and citing 29 U.S.C. § 1132(a)(3) (permitting fiduciaries of a plan to bring an ERISA action)).

Here, plaintiffs are fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and the Fund is a "multiemployer plan" within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). (Compl. ¶¶ 6-7); see LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (explaining the broad, functional definition of fiduciaries under ERISA); Trs. of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc., No. 13 CV 1739, 2013 WL 5637492, at *4 (E.D.N.Y. Oct. 15, 2013) ("Section 502 of ERISA (29 U.S.C. § 1132) creates jurisdiction, endowing plan trustees with standing to enforce section 515."). Accordingly, plaintiffs have standing to recover withdrawal liability under ERISA.

III. Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiffs'] factual allegations as true and draw all reasonable inferences in [plaintiffs'] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Morales v. B&M Gen. Renovation Inc., No. 14 CV 7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), report and recommendation adopted, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." LaBarbera v. ASTC Labs. Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted).

Section 515 of ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement [to] ... make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. "To establish a claim for unpaid withdrawal liability, a plaintiff must show only that it complied with statutory procedural requirements." Div. 1181 Amalgamated Transit Unions v. D&A Bus Co., 270 F. Supp. 3d 593, 608 (E.D.N.Y. 2017) (citing Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., No. 03 CV 4530, 2004 WL 67480, at *2 (S.D.N.Y. Jan 15, 2004)). To satisfy the procedural requirements, the plaintiff must: "(1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." Id. at 608-09.

Here, plaintiffs' undisputed allegations establish that defendant is liable to plaintiffs under ERISA. See Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc., No. 11 CV 5742, 2013 WL 2120338, at *3 (E.D.N.Y. Apr. 3, 2013) ("Plaintiffs allege that defendant failed to make contributions to the Funds. . . .Therefore, defendant's failure . . . constitutes a violation of ERISA." (citations omitted)). Plaintiffs allege that on or around July 31, 2024, defendant permanently ceased to have an obligation to contribute to the Fund, thereby completely withdrawing from the Fund within the meaning of section 4203(a) of ERISA, 29 U.S.C. § 1383(a). (Compl. ¶ 15.) The Fund provided defendant with an initial notice of the withdrawal by letter dated October 1, 2024, and again by email on November 26, 2024. (Id. ¶¶ 16, 20; Bulding Decl., Ex. D.) The Fund also informed defendant of the amount of withdrawal liability principal and provided a payment schedule by letter dated February 25, 2025. (Compl. ¶ 18.) Defendant was to either remit payment or pay in monthly installment payments to be due within sixty days from the date of the letter. (Id. ¶ 19.) The Fund further sent letters to defendant on April 4, 2025 and December 9, 2025 informing defendant that the Fund would pursue all available remedies if it failed to cure the default within sixty days. (Id. ¶ 22.)

According to plaintiffs, defendant has not made any payment, requested review of the withdrawal liability assessment, or initiated arbitration of the withdrawal liability assessment. (Id. ¶¶ 21, 23; Bulding Decl. ¶ 21; Pls.' Memorandum of Law, dated Feb. 27, 2026 ("Pl.'s Mem."), Dkt. No. 8-15, at 4.) These allegations, accepted as true, are sufficient to establish defendant's liability under ERISA § 4219, 29 U.S.C § 1399.

IV. Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup,

973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." Griffiths v. Francillon, No. 10 CV 3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted).

A. Withdrawal Liability

Under ERISA § 4201, 29 U.S.C. § 1381, if an employer who is required to contribute to a multiemployer plan withdraws from that plan, the employer becomes subject to withdrawal liability to the fund for the proportionate share of the fund's unfunded vested benefits. See Trs. of Gen. Bldg. Laborers' Loc. 66 Pension Fund v. J.M.R. Concrete Corp., No. 19 CV 1214, 2023 WL 6385803, at *1 (E.D.N.Y. Sept. 29, 2023). To recover for withdrawal liability from an employer, a plan's sponsor must determine the amount of liability, notify the employer of that amount, include with the notice a schedule for payment, and demand payment in accordance with the included schedule. See ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F. 2d 879, 881 (2d Cir. 1988); Amalgamated Lithographers of Am. v. Unz & Co., 670 F. Supp. 2d 214, 221 (S.D.N.Y. 2009) (citing 29 U.S.C. §§ 1382, 1399).

An employer may, within ninety days of receiving the withdrawal liability notice, request review of the withdrawal determination by the plan sponsor. See 29 U.S.C. § 1399(b)(2)(A). Either party may then initiate an arbitration proceeding to address any unresolved disputes regarding the plan sponsor's determination of liability. See id. § 1401(a)(1). If no arbitration hearing is initiated within the statutorily mandated timeframe, then the plan sponsor's determination of the withdrawal liability becomes final and binding and must be paid in accordance with the schedule provided by the plan. Id. § 1401(b)(1). "[N]o documentation is required to support a finding of withdrawal liability," and the district court will not make an

independent determination as to the reasonableness of the withdrawal liability calculations. Restrepo v. Inline Cable Corp., No. 24 CV 4831, 2025 WL 3461044, at *4 (E.D.N.Y. Sept. 8, 2025) (citation omitted); Gesualdi v. Seacoast Petroleum Prods., Inc., 97 F. Supp. 3d 87, 98 (E.D.N.Y. 2015); see also Trs. of Loc. 813 Ins. Tr. Fund v. Freedom Demolition, Inc., No. 13 CV 2701, 2014 WL 5305983, at *5 (E.D.N.Y. Oct. 15, 2014) ("By failing to initiate an arbitration proceeding . . . defendant waived its right to contest the amount of withdrawal liability calculated by plaintiffs, and that amount thus became due pursuant to 29 U.S.C. § 1401(b)(1).").

An employer completely withdraws from a plan by "(1) permanently ceas[ing] to have an obligation to contribute under the plan, or (2) permanently ceas[ing] all covered operations under the plan." 29 U.S.C. § 1383(a). The Fund determined that defendant had completely withdrawn and calculated the value of defendant's withdrawal liability, in accordance with 29 U.S.C. § 1391, as $104,810. (Id. ¶ 18; Bulding Decl. ¶ 22; Pl.'s Statement of Amounts Due, dated Feb. 27, 2026, Dkt. No. 8-2, ¶ 2.) The Fund is a "multiemployer plan" within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and defendant was obligated to pay contributions to the Fund pursuant to the terms of the CBA. (Compl. ¶¶ 7, 9, 15.) Because defendant did not contest the finding that it had withdrawn from the Pension Fund or challenge the withdrawal liability assessment, defendant waived its right to contest the amount of withdrawal liability. 29 U.S.C. §§ 1399(b)(2), 1401(a)(1). Accordingly, I respectfully recommend that plaintiff be awarded $104,810 in withdrawal liability.

B. Interest

Under ERISA § 502(g)(2), delinquent employers are required to pay interest on unpaid contributions determined by using the rate provided under the plan. 29 U.S.C. §

1132(g)(2). Plaintiffs are entitled to an award of interest on unpaid withdrawal liability calculated from the date that the first liability payment was due until the date of final judgment. Id.

Here, the Trust Agreement provides for interest to be calculated at the rate of 1.5 percent per month, or eighteen percent per year. (Bulding Decl., Ex. A ("Trust Agreement") at 36.) I therefore recommend that plaintiff be awarded $13,852.15 through February 27, 2026, plus $51.69 per day from February 28, 2026 until the date judgment is entered.[3] (Declaration of Michael S. Adler, Esq., dated Feb. 27, 2026 ("Adler Decl."), Dkt. No. 8-3, ¶¶ 11-13.)

C. Liquidated Damages

Plaintiffs also request liquidated damages in the amount of $20,962. (Adler Decl. ¶¶ 14-15; Trust Agreement at 28.) Pursuant to ERISA § 502(g)(2)(C), an employer that fails to comply with its obligations to pay withdrawal liability becomes liable for liquidated damages in an amount equal to the greater of the interest due on the withdrawal liability or up to twenty percent of the withdrawal liability as provided in the collective bargaining and trust agreements. 29 U.S.C. § 1132(g)(2)(C). Accordingly, plaintiffs are entitled to $20,962 in liquidated damages, equal to twenty percent of defendant's withdrawal liability. See Deianni v. New Media Printing, No. 11 CV 5267, 2012 WL 3842596, at *6 (E.D.N.Y. Aug. 17, 2012), report and recommendation adopted, 2012 WL 3839618 (E.D.N.Y. Sept. 5, 2012).

D. Attorney's Fees and Costs

Pursuant to ERISA § 502(g)(2)(D), plaintiffs are typically entitled to payment of their reasonable attorney's fees and costs incurred in a successful action to obtain withdrawal

[3] The daily interest is calculated by dividing the annual amount of simple interest accruing on the principal by 365.

liability. See 29 U.S.C. § 1132(g)(2)(D). Plaintiffs request $517.69 in costs, consisting of the $405 filing fee, a $76 service of process fee, and postage fees of $36.69. (See Adler Decl. ¶ 26, Exs. D, E; Pls.' Mem at 10.) Having reviewed the itemized list of costs, I find plaintiffs' request to be reasonable.

For attorney's fees, courts in this circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58–59 (2d Cir. 2011) (per curiam); see also Morin v. Nu-Way Plastering Inc., No. 03 CV 405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) ("[A] fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates."). Plaintiffs have complied with this requirement. (See Adler Decl., Ex. D.)

In recent years, courts in this district have generally held $450 to be in the upper range of reasonable hourly rates for partners. See, e.g., Pointers, Cleaners & Caulkers Annuity Fund v. Avalanche Constr. Grp., Inc., 28 CV 8501, 2026 WL 323182 (E.D.N.Y. Feb. 6, 2026) (finding that courts in the Eastern District of New York have awarded attorney's fees at an hourly rate of $300 to $450 for partners in ERISA cases) (citation omitted), report and recommendation adopted, 2026 WL 509496 (E.D.N.Y. Feb. 24, 2026); Annuity, Pension, Welfare, Training and Labor Mgmt. Coop. Trust Funds of Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO v. Graci Paving Assocs., Inc., 25 CV 2726, 2025 WL 3520416, at *8 (E.D.N.Y. Nov. 21, 2025)

(finding $465 per hour a reasonable rate for a lawyer with over thirty years of experience in the relevant field of law), report and recommendation adopted, 2025 WL 3515693 (E.D.N.Y. Dec. 8, 2025).

Plaintiffs request $4,138.50 in attorney's fees, which represents 0.6 hours billed at $510 per hour for partner time in 2025 and 7.3 hours billed at $525 per hour for partner time in 2026, all for Mr. Adler. (Adler Decl. ¶¶ 17, 20-22; Pls.' Mem at 10.) Plaintiffs support their request with timesheets, credentials, and other information. (Adler Decl. ¶¶ 24-25, Ex. D; Pls.' Mem at 9-10.) Mr. Adler has been counsel in over 200 ERISA cases, many of which were filed on behalf of the Fund. (Adler Decl. ¶ 23.) The court has previously awarded Mr. Adler a maximum hourly rate of $450. See, e.g., Gesualdi v. Rizzo Assocs., Inc., 21 CV 1833, 2024 WL 4142075 (E.D.N.Y. Sept. 11, 2024) (awarding Mr. Adler hourly rates of $305 in 2022 and $325 in 2023), report and recommendation adopted, 2024 WL 4297646 (E.D.N.Y. Sept. 26, 2024); Finkel v. Zizza & Assocs. Corp., 12 CV 4108 , 2023 WL 8455937 (E.D.N.Y. Dec. 6, 2023) (reducing all partners' hourly rates, including Mr. Adler's, to a $450 per hour cap); Ferrara v. Heavy Constr. Lumber, Inc., 21 CV 2562, 2022 WL 1085380 (E.D.N.Y. Jan. 5, 2022) (awarding Mr. Adler $400 hourly rate), report and recommendation adopted, 2022 WL 620617 (E.D.N.Y. Mar. 2, 2022). Accordingly, I find the appropriate rate for Mr. Adler to be $450 per hour.

Plaintiffs' counsel billed 7.9 hours of legal services for this case. I find that this was a reasonable expenditure of time. See, e.g., Gesualdi v. Seacost Petrol. Prods., Inc., 97 F. Supp. 3d 87, 107–08 (E.D.N.Y. 2015) (collecting cases finding 21.1 to 32.4 hours reasonable); Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ges Bake Shop, Inc., No. 13 CV 728, 2014 WL 1159821, at *10 (E.D.N.Y. Mar. 21, 2014) (finding 31.2 hours of work reasonable

in an ERISA default case). Accordingly, I respectfully recommend that plaintiff be awarded $3,555 in attorney's fees and $517.69 in costs, for a total of $4,072.69.

## CONCLUSION

For the reasons stated above, I respectfully recommend that the motion for default judgment be granted and that plaintiffs be awarded $143,696.84, consisting of: (1) $104,810 in withdrawal liability; (2) interest of $13,852.15 through February 27, 2026; (3) liquidated damages of $20,962; and (4) $4,072.69 in attorney's fees and costs. I also respectfully recommend that plaintiffs be awarded $51.69 in per diem interest from February 28, 2026 through the date of judgment, and that John Doe Companies 1–99 be dismissed without prejudice.

Plaintiffs' counsel is directed to serve copies of this Report and Recommendation on defendant by regular mail, and to file proof of service with the court within ten days of the date of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
August 25, 2026